PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-CR-423 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| MICHAEL SIMMS, | ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | ) | [Resolving ECF Nos. 15, 16, 18] |

Pending are Defendant's Motion to Suppress Unduly Suggestive Identification (ECF No. 15), Defendant's Motion for Revocation of Magistrate Judge's Order of Detention (ECF No. 16), and Defendant's Motion to Dismiss for Pre-Indictment Delay or Exclude Evidence (ECF No. 18). The Government has replied to each motion (addressed respectively, ECF Nos. 24, 22, 23). The Court has considered the parties' briefing, evidence, oral argument, and applicable law. For the reasons explained below, Defendant's motions are denied.

## I. Factual Background

On April 6, 2017, United States Postal Inspectors identified a package which was en route from California to 19021 Raymond Street in Maple Heights, Ohio. After obtaining a search warrant for the package, Inspectors searched the contents and found it contained one kilogram of a mixture and substance containing fentanyl.[1] Postal Inspectors prepared the package for a

---

[1] A field test originally identified the substance as cocaine. Tests administered at the Ohio Bureau of Criminal Investigation found it positive for fentanyl.

(1:19CR423)

controlled delivery the next day, equipping the package with electronic monitoring that would alert Inspectors when the package was opened.

On the morning of April 7, 2017, Postal Inspector Sean Brogan, acting in an undercover capacity, conducted a controlled delivery of the package to the Raymond Street residence. Before making the delivery, he viewed the driver's license photographs of two individuals associated with the address. After knocking on the front door, Inspector Brogan witnessed an African-American male wearing a dark colored sweatshirt partially open the door and receive the package. The interaction between Inspector Brogan and the African-American male lasted roughly fifteen seconds. Approximately six minutes after the package was delivered, the electronic alarm signaled, indicating the package had been opened. Postal Inspectors and local law enforcement then approached the house to execute an anticipatory search warrant. As they were approaching, an African-American male, wearing clothes similar to the individual whom received the package from Inspector Brogan minutes before, fled the area on foot. Officers were unable to catch him, despite their efforts.

After the unsuccessful pursuit, officers executed an anticipatory search warrant at the Raymond Street residence. During the search, officers recovered the parcel which had been opened and was on the kitchen table. On the kitchen counter, within close proximity of the parcel, officers found a knife which they deduced had been used to open the package. Officers seized the knife along with two cell phones, a small amount of marijuana, a cigar filter tip, and a lighter    all of which were recovered from the basement.

2

(1:19CR423)

On April 20, 2017, the knife, lighter, and cigar filter tip were submitted for DNA examination. On May 6, 2017, the Ohio Bureau of Criminal Investigation (BCI), informed law enforcement that DNA found on all three of the items contained a mixture DNA matching multiple individuals, including the defendant, Michael Simms. BCI issued a lab report of its findings on May 8, 2017. After the DNA results indicated that Simms' DNA was on the items, Postal Inspector Sean Brogan was presented a driver's license photo of Simms.[2] Upon reviewing Simms' driver's license, Inspector Brogan positively identified Simms as the person who took the package from him on April 7, 2017.

During the investigation, inspectors learned of other USPS parcels that had been shipped from southern California to the Cleveland, Ohio area. These other parcels were connected through historical shipping records to the seized parcel that inspectors delivered to the Raymond Street address. One of those parcels was mailed from Lakewood, California, on March 15, 2017 to an E. Schaaf Road address, in Brooklyn Heights, Ohio. In the course of the investigation, law enforcement learned that in January 2017, Michael Simms' driver's license listed his address as E. Schaaf Road . ECF No. 24 at PageID #: 195.

On July 22, 2019, Defendant was arrested at his apartment in Sandy Springs, Georgia by federal agents pursuant to an indictment. The Indictment charges Simms with Attempted Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). ECF No. 1. As federal officers were arresting Defendant, he attempted to flee. On

---

[2] Importantly, the government maintains that Inspector Brogan was not told that Defendant's DNA was a match to the items before being shown the photograph.

(1:19CR423)

the day of his arrest, Defendant appeared in the United Stated District Court for the Northern District of Georgia for an initial appearance. The Government moved for detention, arguing that Defendant was a flight risk.

On July 24, 2019 a detention hearing was held before Magistrate Judge Linda T. Walker. ECF No. 16-1. The Magistrate Judge concluded that there were no conditions or combination of conditions that would assure Defendant's appearance at trial or the safety of the community, and remanded him to federal custody.

## II. Law & Analysis

### A.  Motion to Dismiss for Pre-Indictment Delay

Defendant moves the Court to dismiss the indictment, alleging that the Government's pre-indictment delay violated his due process rights under the Fifth Amendment. ECF No. 18. Defendant asserts that despite identifying Defendant as a suspect in the April 6, 2017 controlled delivery of narcotics, an indictment in the case was not sought until July 2019, more than two years later. *Id*. at PageID #: 164. Defendant claims the delay has "severely hampered [his] ability to defend himself against the charges." *Id*. at PageID #: 165. The Government counters that Defendant has not made the required showings of substantial prejudice or that the Government intentionally delayed the indictment to gain a tactical advantage. ECF No. 23 at PageID #: 188-89.

#### 1.  Substantial Prejudice

The Due Process Clause of the Fifth Amendment only requires dismissal for pre-indictment delay when the defendant shows: (1) substantial prejudice to his right to a fair trial;

4

(1:19CR423)

(2) and that delay was an intentional device by the Government to gain a tactical advantage. *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009). Both parts of the test must be met before a defendant is entitled to have the indictment dismissed. *See United States v. Duncan*, 763 F.2d 220, 222 (6th Cir. 1985); *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992) (citing *United States v. Brown*, 667 F.2d 566, 568 (6th Cir. 1982)).

The Court finds Defendant has failed to demonstrate substantial prejudice. Defendant has made only broad assertions that he would be unable to pinpoint where he was on April 7, 2017 and that "it is nearly impossible for him to present an alibi" given the passage of time. ECF No. 18 at PageID #: 165. These broad assertions do not meet the high burden of establishing actual prejudice. The Supreme Court has held that general assertions of prejudice are insufficient to satisfy the two-part test necessary to warrant the dismissal of an indictment because "'the applicable statute of limitations…is…the primary guarantee against bringing overly stale criminal charges.'" *United States v. Marion*, 404 U.S. 307, 322 (1971) (quoting *United States v. Ewell*, 383 U.S. 116, 121 (1966)). The Sixth Circuit reiterated this holding in *Schaffer*. *See* 586 F.3d at 425 ("Moreover, 'the acceptability of a pre-indictment delay is generally measured by the applicable statute of limitations.'") (quoting *United States v. Atisha*, 808 F.2d 920, 928 (6th Cir. 1986), cert. denied, 479 U.S. 1067). Defendant failed to specify an alibi witness. Nor has he articulated how delay may have affected his witness's testimony. *United States v. Wright*, 343 F.3d 849, 860 (6th Cir. 2003) (stating that because defendant does not articulate witnesses that are unavailable, he cannot establish prejudice). Defendant's assertion that his alibi defense would be stronger if he were indicted sooner is thus unavailing.

5

(1:19CR423)

Defendant also asserts that he has suffered prejudice because the items seized from the Raymond Street residence have been destroyed and, therefore, cannot be retested. While the Court recognizes the importance of access to evidence for the Defendant to mount his defense, this concern is assuaged by the availability of the DNA swabs for retesting. That the *source* evidence was destroyed after two years does not amount to "substantial injustice" to Defendant's right to a fair trial, contemplated by *Schaffer*. 586 F.3d at 424. Further, in light of the destroyed source evidence, Defense is welcome to make argument on destruction at trial.

Because Defendant has not shown actual prejudice he has not established the first part of the two-part test to warrant dismissal of the Indictment for pre-indictment delay.

### 2. Government's Intent[3]

As the Sixth Circuit held in *Schaffer*, "the burden is on the defendant to show 'that the delay between the alleged incident and the indictment was an intentional device on the part of the Government to gain a decided tactical advantage in its prosecution.'" *Id*. at 425-26 (citing *Greene*, 737 F.2d at 574). It is well-established that a delay resulting from investigative efforts "does not deprive [a defendant] of due process, even if his defense may have been somewhat prejudiced by the lapse of time." *Atisha*, 804 F.2d at 928; *see also United States v. Lovasco*, 431 U.S. 783, 796 (1977).

---

[3] Defendant's failure to demonstrate actual prejudice makes it unnecessary for the Court to address whether he established "that the delay was an intentional device by the government to gain a tactical advantage." *Id*. (citing *United States v. Greene*, 737 F.2d 572, 574 (6th Cir. 1984)); *see also United States v. Wright*, 343 F.3d 849, 860 (6th Cir. 2003). The Court nonetheless conducts an analysis under the second factor.

(1:19CR423)

Defendant's assertions that "there is no reason to believe the delay was for investigation purposes" and if "the government wanted to find him, they certainly could have" ([ECF No. 18 at PageID #: 165](#)) are insufficient to establish that the Government's delay was to gain a tactical advantage. Defendant fails to provide any specific showings that pre-indictment delay was intentional. Because the applicable standard "neither imputes nor presumes an improper purpose," a defendant cannot satisfy his burden by simply alleging that he "cannot fathom a valid reason for delay." *[Schaffer, 586 F.3d at 426](#)*.

The Government established during the hearing that delayed charges were a direct result of investigators continuing an investigation into the organization that shipped the kilogram of fentanyl to Raymond Street. Law enforcement officers were hoping to interdict another package after the controlled delivery. The Government has the right, and the duty, to fully investigate a crime in its entirety before bringing charges to the Grand Jury and cannot be penalized for "the goal of 'orderly expedition' to that of 'mere speed'. *[Lovasco, 431 U.S. at 795-796](#)* (citing *[Smith v. United States, 360 U.S. 1, 10 (1959)](#)*).

Accordingly, the Court finds that the delay, between identification of Defendant as a suspect in May 2017 and the indictment, was not an intentional device on the part of the Government to gain a tactical advantage in its prosecution of Defendant.

**B.     Alternative Motion to Exclude DNA Evidence**

Defendant, in his Motion to Dismiss, moves alternatively to exclude DNA evidence from trial due to the destruction of the source evidence. [ECF No. 18](#). Defendant alleges that the knife, lighter, and cigar tip filter found to contain his DNA have since been destroyed. *[Id. at PageID #:](#)*

7

(1:19CR423)

164. He submits that since because he is unable to submit direct sources of the DNA evidence for independent examination, the Court should exclude the DNA samples from trial.

Under the Due Process Clause of the Fourteenth Amendment, criminal defendants must be afforded a "meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The Supreme Court has established two tests to determine whether the Government's failure to preserve evidence amounts to a due process violation. The first test applies where "materially exculpatory" evidence is not accessible; the other test where "potentially useful" evidence is not accessible.

The first test, established in *Trombetta*, articulates that the Government violates due process rights when it does not preserve "materially exculpatory" evidence. For evidence to meet this standard, it must be both exculpatory before its destruction, and the defendant must be unable to obtain comparable evidence by other reasonably available means. *United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001) (citing *Trombetta*, 467 at 489). The destruction of materially exculpatory evidence violates the defendant's due process rights, *regardless* of whether the government acted in bad faith. *Id*. (emphasis added).

The second test, established in *Arizona v. Youngblood*, 488 U.S. 51 (1988) applies in cases where the government fails to preserve "potentially useful" evidence. *See Wright*, 260 F.3d at 570. To establish a due process violation for the failure to preserve "potentially useful" evidence, a defendant must show that: (1) the government acted in bad faith in failing to preserve the evidence; (2) the exculpatory value of the evidence was apparent before its destruction; and (3) the nature of the evidence was such that the defendant would be unable to obtain comparable

8

(1:19CR423)

evidence by other means. *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (citing *Youngblood*, 488 U.S. at 57-58). A determination of bad faith turns upon the Government's knowledge of the evidence's exculpatory value at the time it was lost or destroyed. *Wright*, 260 F.3d at 571. Negligence in failing to preserve exculpatory evidence is insufficient to establish bad faith. *Id*. at 572.

The Government has produced a vast amount of circumstantial evidence linking Defendant to the charged crime. The Government also notified the Court of its intent to present eye-witness testimony at trial, linking Defendant to the drug parcel. Thus, the Court finds that the knife, lighter, and cigar tip filter — sources of the Government's DNA evidence — are "potentially useful" as opposed to "materially exculpatory" to Defendant.[4]

Because the Court finds no bad faith on the part of the Government in failing to preserve the DNA source evidence, Defendant's due process claim is rejected without further analysis. *See Wright*, 260 F.3d at 571 (finding, in line with *Youngblood*, that no further analysis is required where defendant cannot produce evidence of government's bad faith in failing to preserve evidence). The Court has witnessed no allegations of official animus toward Defendant or of conscious efforts to suppress exculpatory evidence. In contrast, the Government has provided Defendant with the BCI report and have indicated their willingness to turn over all DNA samples at Defendant's request.

---

[4] If, however, law enforcement agents were to have also destroyed the DNA samples, the Court would consider analysis under *Trombetta*'s "materially exculpatory" inquiry. But this is not the case.

9

(1:19CR423)

Accordingly, the Court is not inclined to exclude DNA evidence from trial due to destruction of the knife, lighter, and cigar tip filter. Defendant is free to argue at trial as to the *weight* the Government's DNA evidence should be afforded.

**C.     Motion to Suppress Unduly Suggestive Identification**

Defendant moves the Court to suppress identification by Postal Inspector Sean Brogan based on an unduly suggestive one-photo identification procedure. ECF No. 15. Defendant argues law enforcement failed to follow a neutral, non-suggestive route of displaying a multi-photo array. *Id*. at PageID #: 79. Instead, they chose a procedure of displaying one photo    the driver's license of Defendant. Defendant claims that if Inspector Brogan's pre-indictment or in-court identification are not excluded, his due process rights will be violated. *Id*.

Courts follow a two-step analysis when determining whether introduction of identification testimony violates due process. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992). First, the Court must determine whether the original identification procedure was unduly suggestive. If the identification procedure was unduly suggestive, the Court must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable. *Id*.

**1.     Suggestive Finding**

Defendant argues the identification procedure was unduly suggestive because Inspector Brogan was shown a single photo in the context of a federal investigation where Brogan was the only eyewitness. ECF No. 15 at PageID #: 80. The Court disagrees.

While identifications arising from single-photograph displays "may be viewed in general with suspicion," *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977), the Sixth Circuit has declined

10

(1:19CR423)

to find that "every identification through a 'single photo display' is unduly suggestive as a matter of law." *United States v. Moore*, 240 F. App'x 699, 706 (6th Cir. 2007). Inspector Brogan's pretrial identification of Defendant was made through a suggestive and unnecessary identification procedure, however, the procedure was not *unduly* suggestive.

During the evidentiary hearing, the Court heard testimony from the Government's witness, United States Postal Inspector Marc Kudley, as to the pretrial identification procedure used on Inspector Brogan. Inspector Kudley testified that he presented Michael Simms' drivers license to Inspector Brogan in May of 2017 without giving context or indicating the purpose behind identification. Inspector Kudley assured the Court that although DNA results implicating Michael Simms were available at the time of the pretrial identification, Inspector Brogan would not have been aware of the results at that time. The Court, finding Inspector Kudley to be credible, is satisfied that the pre-trial identification procedure, although suggestive, was not *unduly* suggestive.

### 2. Reliability

The Court agrees with Defendant's assertion that "there was no exigency or unusual circumstances that compelled law enforcement to show Inspector Brogan a single photo." ECF No. 15 at PageID #: 80. Law enforcement could have, and should have, pursued a neutral procedure in their efforts to have their sole eyewitness identify the main suspect in this case. Nevertheless, the Court finds Inspector Brogan's pre-trial identification of Defendant to be

11

(1:19CR423)

reliable. Further, the Court is assured that a subsequent in-court identification to be made by Inspector Brogan will cure any taint inherent in the prior pre-trial identification.[5]

The totality of the circumstances permits the admission of the identification "if, despite the suggestive aspect, the out-of-court identification possesses certain features of reliability." *Manson*, 432 U.S. at 110. Under the totality of the circumstances, the court is to weigh the five *Biggers* factors when determining whether the identification was reliable. These five factors are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

The Government has demonstrated that the *Biggers* factors, taken together, weigh in favor of reliability with regard to the pretrial identification. In evaluating prong one, the Court was presented with evidence that Inspector Brogan had at least fifteen seconds to view the suspect at the time of the crime. Fifteen seconds, while separated only by a doorframe from the suspect, is a significant time period for a witness to observe the suspect's facial features and overall stature. It thus weighs in favor of a reliable identification. The second factor also bodes in favor of the pretrial identification's reliability. Inspector Brogan's sole aim in making the

---

[5] Inspector Brogan's pretrial identification was not so tainted by Inspector Kudley's presentation of Simms' driver's license that it was unduly suggestive. Inspector Brogan will be available at trial for cross examination by Defense counsel as to reliability.

(1:19CR423)

controlled delivery was to observe the suspect to whom he was making the delivery. This is not a circumstance in which the witness was subjected to stress, excitement, or confusion. *Cf. United States v. Russell*, 532 F.2d 1063, 1066 (6th Cir. 1976) (outlining the risk of misidentification when the observation was made at a time of "stress and excitement"). Inspector Brogan, rather, was focused and went into the interaction with a heightened degree of attention. In evaluating the third factor, Inspector Brogan's description of Defendant, while limited to an "African-American male in a dark colored sweatshirt," is still an *accurate* profile of Defendant. His description of the suspect following the controlled delivery has remained consistent. Therefore, this factor also weighs in favor of reliability. The fourth factor also demonstrates reliability of the pretrial identification, as Inspector Kudley testified that Inspector Brogan expressed certainty both immediately and after being presented with Defendant's driver's license. Finally, just over a month had elapsed between Inspector Brogan's interaction with the suspect on April 6, 2017 and his identification of Simms. This short period of time is well within the time frame contemplated by the Sixth Circuit as reasonable in assessing reliability of eyewitness identifications. *See United States v. Meyer*, 359 F.3d 820 (6th Cir. 2004) (finding an identification, more than five years after the crime was reliable where witness quickly and confidently identified the suspect, testified to good opportunity to view the suspect, and focused attention during the crime).

When taken together, the totality of the circumstances bode in favor of admissibility. The Court finds the pretrial identification procedure did not violate due process because it was not

13

(1:19CR423)

*unduly* suggestive and the identification made by Inspector Brogan possesses "sufficient aspects of reliability." *Manson*, 432 U.S. at 106.

### D. Motion for Revocation of Magistrate Judge's Order of Detention

Defendant moves the Court to review and reverse the Magistrate Judge's order of detention. ECF No. 16. Specifically, Defendant wants the Court to consider whether there are conditions of release that could reasonably assure his appearance as required and the safety of the community. *Id*. at PageID #: 109.

When the Court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, "[it] acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Pritchard*, 2008 WL 920434 at *1 (N.D. Ohio Apr. 3, 2008) (citing *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992).

Under the Bail Reform Act, 18 U.S.C. § 3142, a judicial officer shall order the detention of a criminal defendant pending trial if he finds that no condition or combination of conditions will reasonably assure the defendant's appearance as required or the safety of the community. 18 U.S.C. § 3142(e). Factors to be considered are (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant including family and community ties, residence in the community, employment and criminal history; (4) and the nature of any danger to persons in the community which would be posed by the defendant's release. 18 U.S.C. § 3142(g).

There is a rebuttable presumption in favor of pretrial detention if the judicial officer determines there is probable cause to believe that the person committed an offense for which a

14

(1:19CR423)

potential maximum term of ten years or more is prescribed by the Controlled Substances Act, 21 U.S.C. § 801. 18 U.S.C. § 3142(e)(2). As Defendant faces a maximum prison term of ten years for violating 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), it is undisputed that the presumption in favor of detention applies in this case. The presumption shifts the burden of production to Defendant to show that his release would not pose a flight risk or a danger to any person or the community. 18 U.S.C. § 3143(a). The Government must then demonstrate Defendant's flight risk by a preponderance of the evidence and danger to the community by clear and convincing evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

### 1. Nature and Circumstances of the Offense Charged

The Court finds that the nature and circumstances surrounding this offense are unquestionably serious. As discussed above, Defendant faces one charge: Attempted Possession with Intent to Distribute Fentanyl. The distribution of fentanyl, one of the most deadly illegal drugs on the black market, poses an incredible threat to community members. This factor weights toward detention and does not support Defendant's burden of overcoming the presumption of detention.

### 2. Weight of the Evidence

Given the nature of the drug delivery scheme investigated in this case, the DNA recovered from a search of the Raymond Street residence, and additional circumstantial evidence tying Defendant to the controlled delivery on April 6, 2017, the weight of the Government's evidence appears strong. Accordingly, the weight of the evidence militates against release and for the presumption of detention.

(1:19CR423)

### 3. History and Circumstances of Defendant

Defendant has an extensive criminal record, with charges dating back to 2000. Defendant's criminal history involves forgery, theft, failure to comply, a number of felony drug trafficking charges, and most recently aggravated vehicular assault in 2014. As outlined in the pretrial services report, Defendant also has a history and pattern of failure to appear at court proceedings, including trial. While Defendant enjoys support of family and others around him now that he has been transferred to Ohio, the Court's concern with Defendant's escalating criminal history and prior failures tilt in favor of the presumption of detention in this case.

### 4. Nature and Seriousness of the Danger to the Community and Risk of Flight

As discussed above, the Court has concerns about the nature of Defendant's alleged criminal conduct as charged in this case. The Court also has concerns about the proximity in time between the instant charge and Defendant's prior charges. Persistent lawbreaking poses a danger to the community. This danger is heightened by Defendant's habit of flight. The Court finds it significant that, after learning a federal warrant had been issued for his arrest, Defendant, nevertheless, attempted to flee. Defendant's efforts to evade arrest were irrefutably captured by an arresting officer's body camera and reviewed during the evidentiary hearing.[6]

### 5. Summary

---

[6] Defendant's attempted flight and his asking the arresting agents (some version of) "how they found him" strongly discourages the Court from believing that some condition or combination of conditions, including home detention and/or surety, would ensure his presence when it would be required and keep the public safe.

16

(1:19CR423)

For the reasons stated above, the Court finds by clear and convincing evidence that Defendant presents a danger to the community and, despite being in the Northern District of Ohio where family is dense, the Court finds by a preponderance of evidence that Defendant is a risk of flight. In sum, the Court does not find that the [§ 3142(g)](§ 3142(g)) factors support a finding that release is appropriate. The presumption for detention has not been overcome. Accordingly, Defendant's request for release is denied and Defendant is ordered detained.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Suppress Unduly Suggestive Identification ([ECF No. 15](ECF No. 15)), Defendant's Motion for Revocation of Magistrate Judge's Order of Detention ([ECF No. 16](ECF No. 16)), and Defendant's Motion to Dismiss for Pre-Indictment Delay or Exclude Evidence ([ECF No. 18](ECF No. 18)) are denied.

IT IS SO ORDERED.

| | |
|---|---|
| December 23, 2019 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |